Victor **SANCHEZ**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 08–94–00158–CR.

Court of Appeals of Texas,
El Paso.

July 3, 1996.

Ray Velarde, El Paso, for Appellant.

Jaime E. Esparza, District Attorney, El Paso, for State.

Before LARSEN, McCLURE and CHEW, JJ.

### OPINION

PER CURIAM.

Victor Sanchez and his wife, Guadalupe Sanchez, were each convicted by a jury of possession of cocaine, under twenty-eight grams. Mr. Sanchez was sentenced to three years confinement and a $5,000 fine. Among other motions, defendants filed sworn motions to recuse the judge presiding over their trials. The trial judge referred the motions to the administrative judge of the Sixth Judicial Region, who denied them without hear-

---

ing. The Sanchezes challenge this summary denial of their recusal motions without hearing. We abate for evidentiary hearing.

### The Recusal Motion

Victor Sanchez filed a motion to recuse the Honorable Jerry Woodard,[1] based upon alleged violations of due process, TEX.R.CIV.P. 18a and 18b(2), and TEX.CODE JUD.CONDUCT, CANONS 1, 2, and 3. His verified motion states that the Impact Court, in which his case was heard, derived its funding based upon conviction rates in those cases presented to it by the El Paso County Metro Narcotics Task Force. Specifically, he alleged:

[T]he continued funding of the Impact Court is based upon, the *successful* conviction of narcotics cases referred to it by the said Task Force. The same holds true for the El Paso County Metro Narcotics Task Force (formerly the West Texas Multi–County Narcotics Task Force) which is charged with investigating and presenting narcotics cases *exclusively* to the West Texas 34th Impact Court No. 1. Based upon the foregoing, it is apparent that the Court has as much interest in the successful prosecution and conviction of the said narcotics cases as does the Metro Unit presenting such cases. Under these circumstances, defendant cannot reasonably expect to be afforded or receive a fair trial before a neutral, detached, fair and impartial tribunal, as is his right under the United States and Texas Constitutions.

\* \* \* \* \* \*

Here, the Judge of this court is an 'assigned' Judge. For the said judge to be paid for services rendered and duties performed via the said assignment there has to be a court in existence to enable the said judge to perform his duties and obligations pursuant to such assignment. That is to say, if there is no court then there is no assignment, hence no salary, payment or compensation to the said judge. In fact, it is of no consequence where the compensation, payment or salary is derived because if there is no court to allow a judge to perform this 'assignment' then there is no

such compensation and therefore no 'judicial' interest in protecting the existence and continued viability of such (funded) court.

Defendant would show that the Impact Court is a creature of, and solely supported by, grant monies. Further, the presiding judge of said Impact Court has no other function or assignments than presiding over the cases submitted for prosecution exclusively by the Metro–Narcotics Task Force. In other words, this court sustains its existence by relying upon the continued submission (and successful prosecution) of all cases from the Metro Narcotics Task Force. Without these cases being channeled by said Task Force, there would be no court over which Honorable Jerry Woodard would be assigned or preside. Without the Impact Court, the presiding judge has no other assignment or docket or job. Hence, the interest, bias and prejudice of the presiding judge of the Impact Court becomes glaringly obvious as being self-serving as well as self-sustaining.

The motion specifically requested an evidentiary hearing before another judge, assigned to determine the merits of defendant's motion. It is uncontroverted that no hearing was ever held. On appeal, Sanchez complains that an evidentiary hearing was mandatory under TEX.R.CIV.P. 18a once the recusal motion was referred to the administrative judge. We agree.

### Recusal a Proper Method to Challenge Bias

The state urges two arguments as to why an evidentiary hearing was not required here: First, that appellant is attacking the funding and existence of the Impact Court itself, and recusal is not an appropriate vehicle for challenging institutional bias; and second, that the recusal motions could be properly determined as a matter of law, and therefore an evidentiary hearing was not necessary. We disagree with both assertions.

---

**1.** Retired Judge, appointed by the administrative judge of the Sixth Judicial Region to preside over all proceedings in the West Texas Impact Court Number 1.

■ First, we do not read the recusal motion here as directed solely against the institution of the Impact Court, rather than against Judge Woodard individually. The motion asserts that Judge Woodard has a special interest in insuring that this Impact Court continues to receive grant funds, and therefore a special interest in insuring that defendants are convicted in the Impact Court. The motion states that Judge Woodard is assigned solely to the Impact Court, that he derives his income solely from that assignment, and that if the Impact Court were discontinued, he would have no remaining docket, assignment, or job. These are allegations urging reasons why *this judge* should not sit, not simply allegations that the Impact Court is unconstitutional.

Although the motion does contain a due process challenge, that does not make it an inappropriate means for challenging the individual judge with individual concerns who is assigned to that court.[2] Further, we note that the recusal motion alleges the Impact Court is funded based upon the rate of convictions it obtains. If this is true, it raises very serious questions about the neutrality and impartiality of *any* judge assigned to preside over such a court, and deriving income from such assignment. We find no authority that suggests a funding scheme favoring convictions which would affect all judges assigned to that court would not be the proper subject of a recusal motion aimed at the particular judge assigned to hear a particular case.

■ Moreover, we do not see that *Vargas v. State*, 883 S.W.2d 256, 259 (Tex.App.— Corpus Christi 1994, pet. ref'd), relied upon by the state, impacts our analysis. There, a motion entitled "Motion to Disqualify the Judge Sitting in the Hidalgo County Drug Court from Hearing Matters Objecting to Jurisdiction of the Drug Court," was directed

against any judge presiding over the Hidalgo County Drug Court, alleging that any judge of the drug court had an interest in the outcome of a jurisdictional challenge, as that judge would necessarily lose income by ruling the court lacked jurisdiction. Although assuming (without deciding) that the motion stated proper grounds for recusal, the Corpus Christi court determined that the motion was not verified, that on its face it did not meet the minimum requirements of Rule 18a, and that it therefore never triggered the rule's mandatory referral and hearing provisions. Thus, it was properly overruled by the visiting judge being challenged. *Id.* A trial judge may properly make the initial determination whether a recusal motion is in compliance with the rule. *Id. Vargas* is of little value in determining the issues presented here.

■ Finally, we are not persuaded that these motions may be summarily decided as a matter of law without the taking of evidence. As the state suggests, it is true that impact courts have withstood constitutional challenges. A review of these cases, however, does not reveal that the particular issue here has been settled: that is, no court has held that an impact court with a single judge sitting by permanent assignment, and dependent upon a conviction rate for his income, is a neutral jurist untouched by any appearance of impropriety as a matter of law. Rather, these cases have simply held that impact courts are constitutionally permissible extensions of the district courts they serve. *See Hunnicutt v. State*, 523 S.W.2d 244, 245 (Tex. Crim.App.1975); *Zamora v. State*, 508 S.W.2d 819, 822 (Tex.Crim.App.1974); *Alexander v. State*, 903 S.W.2d 881, 882–83 (Tex. App.—Fort Worth 1995, no pet.); *Rogers v. State*, 846 S.W.2d 883, 884–85 (Tex.App.— Beaumont 1993, no pet.); *Armstrong v.*

---

**2.** Like Schrodinger's cat, we view the motions as being two things at once: a challenge to the Impact Court's method of funding, and a challenge to the neutrality of a trial judge who relies upon that method of funding for his supper. Unlike that paradoxical cat, however, we do not view those two challenges as mutually exclusive (a condition perfectly possible in quantum physics, but not in Texas criminal law). We conclude that if defendant's allegations are true, and the

trial judge is dependent for his income on the number of *convictions* obtained in his court (rather than the number of cases disposed of or some other neutral criterion), this would indeed be a situation in which the judge's impartiality might reasonably be questioned, or in which it could be shown that he has a personal bias concerning the subject matter. *See* Tex.R.Civ.P. 18b(2).

*State*, 719 S.W.2d 668, 669 (Tex.App.—Fort Worth 1986, no pet.).

For these reasons, we are compelled to hold that the administrative judge of the Sixth Judicial Region erred in refusing to hold an evidentiary hearing on the allegations urged in Victor Sanchez's motion to recuse. Point of Error Two is sustained.

### *Abatement*

■ Where an appellate court finds that the trial court erred in failing to have a hearing on a motion to recuse, the proper remedy is to abate the appeal and order the administrative judge of the judicial region to hear, or assign another judge to hear, the recusal motion. *Arnold v. State*, 778 S.W.2d 172, 180 (Tex.App.—Austin 1989), *aff'd*, 853 S.W.2d 543 (Tex.Crim.App.1993); *Morris v. State*, 692 S.W.2d 109, 110 (Tex.App.—El Paso 1985, pet. ref'd). We therefore abate the appeal pending a recusal hearing. Upon completion of such hearing, we direct that the statement of facts and order of the assigned judge be forwarded to this court as a supplemental record in the appeal.

### *CONCLUSION*

The appeal is abated for conduct of a recusal hearing on or before September 13, 1996 in accordance with this opinion.

