**Opinion filed May 23, 2024**



In The

# Eleventh Court of Appeals

_____

## No. 11-22-00263-CR
_____

**GARY LEE REED, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 104th District Court**
**Taylor County, Texas**
**Trial Court Cause No. 21546-B**

## M E M O R A N D U M   O P I N I O N

Appellant, Gary Lee Reed, appeals the trial court's judgment revoking his deferred adjudication community supervision for the offense of aggravated assault family violence with a deadly weapon, a first-degree felony. TEX. PENAL CODE ANN. § 22.02(b)(1) (West Supp. 2023). In a single issue, Appellant argues that the evidence was legally insufficient to support the trial court's finding of "true" for certain allegations. We affirm.

*Factual and Procedural History*

In August 2019, Appellant pled guilty to the first-degree felony offense of aggravated assault family violence and pled "true" to the habitual offender enhancement. The trial court accepted the pleas and sentenced Appellant to eight years' deferred adjudication community supervision. Appellant was required, as a condition of his community supervision, to have no contact with the victim, Telia Fay Elmore. In April 2021, the State filed an amended motion to adjudicate Appellant's guilt and to revoke his community supervision, alleging that Appellant had violated six conditions of his community supervision.

The State waived the first allegation. In paragraph six, the State alleged that Appellant violated condition Q of his community supervision when he contacted Telia in December 2019. Paragraph two of the amended motion alleged that Appellant violated condition A of his community supervision[1] when he intentionally, knowingly, and recklessly caused bodily injury to Telia in December 2019. Paragraph three alleged the same violation of condition A of community supervision, but as to Teresa Ann Elmore, Telia's mother. Paragraphs four and five alleged that Appellant violated conditions D and N of his community supervision by failing to report to his community supervision officer and by failing to pay his court appointed attorney's fees on a monthly schedule.

Appellant pled "true" to allegations four and five, but pled "not true" to allegations two, three, and six. Four witnesses testified during the hearing: Telia, Teresa, and the two officers who responded to the December 2019 incident. Telia testified that she was in a relationship with Appellant and that she was the named

---

[1]The trial court's August 15, 2019 order of deferred adjudication states: "condition A" requires that Appellant will "[c]ommit no offense against the laws of this or any other state, or the United States"; "condition D" requires monthly reporting to the Community Supervision and Corrections Department Officer of Taylor County, Texas; "condition N" requires timely payment of various listed fees; and "condition Q" requires that "Defendant is to have no contact with Telia Fay Elmore."

victim in Appellant's original deferred adjudication community supervision case. Telia also testified that she was the alleged victim in the assault that took place in December 2019. Telia admitted that she knew there was a "no contact" order between Appellant and herself as part of his community supervision; notwithstanding the order, Appellant moved back in with her the day that he was released from custody. Teresa was living with Telia and Appellant in December 2019, and she became involved in a physical conflict between Telia and Appellant. Teresa testified, as did Telia, that Appellant physically assaulted both women during that altercation.

The two officers testified regarding their response to the 9-1-1 call in December 2019. Abilene Police Lieutenant Joe Tauer testified that Appellant was attempting to leave the premises in his vehicle when Lieutenant Tauer arrived in response to the call for service. Following a brief conversation with Appellant, Lieutenant Tauer learned that one of the reasons that Appellant was attempting to drive away was because he knew that he was not supposed to be on the premises.

Abilene Police Officer Bryan Stevens arrived at the home after Lieutenant Tauer. Both Telia and Appellant were outside when Officer Stevens arrived. Officer Stevens testified that he initially did not see any injuries on Telia, but that she was yelling out that Appellant had assaulted her and should be arrested. Officer Stevens indicated that he later noticed Telia's arm was red, and that Teresa had a visible injury to her foot—but he suspected that the injury on Telia's arm may have been self-inflicted. However, Officer Stevens also testified that, in family violence cases, it is not unusual for inflicted injuries to appear after time has passed.

At the conclusion of the hearing, the trial court found that allegations two, three, four, five, and six were "true." The trial court adjudicated Appellant guilty of the offense, revoked his deferred adjudication community supervision, and

sentenced him to twenty-five years' imprisonment in the Institutional Division of the Texas Department of Criminal Justice.

*Standard of Review*

We review a trial court's order revoking community supervision for an abuse of discretion. *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006). In that regard, we review the evidence in the light most favorable to the trial court's ruling. *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984). "In a revocation proceeding, the trial court has discretion to revoke community supervision when a preponderance of the evidence supports *one* of the State's allegations that the defendant violated a condition of his community supervision." *Leonard v. State*, 385 S.W.3d 570, 576 (Tex. Crim. App. 2012) (emphasis added); *see Jones v. State*, 472 S.W.3d 322, 324 (Tex. App.—Eastland 2015, pet. ref'd). Although a defendant is not entitled to community supervision, once community supervision has been ordered in lieu of other punishment, the trial court may not arbitrarily withdraw a defendant's community supervision. *Leonard*, 385 S.W.3d at 576 (citing *DeGay v. State*, 741 S.W.2d 445, 449 (Tex. Crim. App. 1987)). Thus, there must be a showing that the defendant violated a condition of the community supervision imposed by the trial court. *Id.* Additionally, the judgment of the trial court should be affirmed if the appellant fails to challenge *all* of the grounds on which the trial court revoked community supervision. *Guillory v. State*, 652 S.W.3d 923, 928 (Tex. App.—Eastland 2022, pet. ref'd) (citing *Alvarez v. State*, No. 11-13-00322-CR, 2015 WL 6121359, at *4 (Tex. App.—Eastland Oct. 15, 2015, no pet.) (mem. op., not designated for publication)); *Lott v. State*, No. 01-22-00067-CR, 2024 WL 628933, at *1–2 (Tex. App.—Eastland Feb. 15, 2024, no pet.) (mem. op., not designated for publication); *see Baxter v. State*, 936 S.W.2d 469, 472 (Tex. App.—Fort Worth 1996) (per curiam), *pet. dism'd*, 960 S.W.2d 82 (Tex. Crim. App. 1998); *see also Jimenez v. State*, No. 01-06-01101-CR, 2007 WL 3105814, at *1 (Tex. App.—

Houston [1st Dist.] Oct. 25, 2007, no pet.) (mem. op., not designated for publication).

*Analysis*

Here, Appellant pled "true" to allegations four and five and the trial court founds these allegations to be "true." In addition, the trial court found allegations two, three, and six to be "true." Appellant argues that he only pled true to "technical violations" of his community supervision, and without the trial court's insufficient finding as to the other violations, such violations "most likely would not have been used to violate his probation and he would likely not have been sent to prison." In this regard, Appellant only challenges the "true" findings to the allegations on which he pled "not true"—allegations two and three, that he: "intentionally, knowingly, and recklessly cause[d] bodily injury to Telia Fay Elmore" and "intentionally, knowingly, and recklessly cause[d] bodily injury to Teresa Ann Elmore," respectively.[2]

First, as previously stated, a finding of "true" for even *one* of the alleged violations of a defendant's probation is sufficient to support a trial court's revocation of community supervision. *See Leonard*, 385 S.W.3d at 576. Here, regardless of whether Appellant categorizes allegations four and five as "technical," he pled "true" to both allegations and the trial court accepted Appellant's pleas and found both allegations to be "true." These findings, alone, support the trial court's revocation order.

Second, on appeal, Appellant has failed to contest the trial court's finding of "true" to allegation six. Because Appellant has not challenged the sufficiency of the evidence for any of the allegations that the trial court found to be "true," we must affirm the judgment revoking community supervision. *Baxter*, 936 S.W.2d at 472;

---

[2]At the hearing, Appellant did not contest part of allegation six—that he had contact with Telia. Instead, he challenged the second part, which alleged that he assaulted Telia in December 2019.

*see Leonard*, 385 S.W.3d at 576; *Moore v. State*, 605 S.W.2d 924, 926 (Tex. Crim. App. [Panel Op.] 1980). Thus, we need not address whether sufficient evidence exists to support the trial court's findings of "true" to the allegations to which Appellant pled "not true." *See* TEX. R. APP. P. 47.1. As to allegation six, the evidence presented during the hearing was enough to support the alleged violation of Appellant's no contact condition under a preponderance-of-the-evidence standard. *See Hacker v. State*, 389 S.W.3d 860, 865 (Tex. Crim. App. 2013) (citing *Rickels*, 202 S.W.3d at 764) (Where, in the context of a revocation proceeding, a "preponderance of the evidence" means "that greater weight of the credible evidence which would create a reasonable belief that the defendant has violated a condition of his probation."). Telia testified that Appellant returned to live with her the day that he was released on community supervision, despite the no contact order. Further, Telia and Teresa each testified that Appellant was living with them at the time of the alleged assaults—which occurred after Appellant was placed on deferred adjudication.

When Lieutenant Tauer arrived at the home where all three were living, Appellant was attempting to leave, and communicated to the officer that he knew he was not even supposed to be there. Thus, there is sufficient evidence that, under a preponderance-of-the-evidence standard, Appellant violated condition Q of his Order of Deferred Adjudication. This violation is clearly material and there is no argument before us that it is not. Appellant was specifically ordered to have no contact with Telia as a part of his plea bargain and Order of Deferred Adjudication. According to the evidence presented at the hearing, Appellant not only violated condition Q, but he knew that he was in violation of his community supervision. Again, only one alleged violation is required to be "true" to revoke a defendant's community supervision.

6

There are three unchallenged findings on appeal, and each is supported by a preponderance of the evidence. We nevertheless disagree with Appellant's contention that the State presented insufficient evidence to support the trial court's finding of true to allegations two and three. We evaluate the evidence and confirm that each is supported by the record to address Appellant's stated issue on appeal.

Paragraphs two and three allege that Appellant violated condition A of his probation when he committed assault against two people: Telia and Teresa. The paragraphs allege that Appellant intentionally, knowingly, and recklessly caused bodily injury to each Telia and Teresa, who were each a member of his household, as described in Section 71.005 of the Texas Family Code. Paragraph two alleges that Appellant caused injury to Telia by dragging her by the hair and pinning her against the wall, and paragraph three alleges that Appellant caused injury to Teresa by pushing her.

Both Telia and Teresa testified they were assaulted and sustained injury by Appellant's actions in December 2019. Specifically, Telia testified that Appellant dragged her by her hair from her mother's room to the living room. Teresa confirmed this and testified that Appellant shoved Telia up against a wall. Telia and Teresa both testified that Appellant pushed Teresa. Teresa's leg was injured as a result of Appellant pushing her. The testimony was clear that Appellant, Telia, and Teresa were living together at the time of the altercation. Additionally, Officer Stevens testified that, while he was suspicious about what happened or how they were injured, he arrived after the altercation and Telia and Teresa had both sustained injuries.

The record shows that, Appellant committed offenses "against the laws of this or any other State, or the United States" thereby violating a condition of his deferred adjudication community supervision. The evidence presented by the State to the trial court of Appellant's aggravated assault family violence with a deadly weapon

7

meets the preponderance-of-the-evidence standard for the allegations related to this offense. The greater weight of the evidence presented about the altercation and injuries sustained was sufficient to create a reasonable belief that Appellant violated a condition of his probation by committing the offense of assault against both Telia and Teresa. Thus, the trial court did not abuse its discretion in concluding that Appellant violated both conditions as alleged in paragraphs two and three of the State's motion to revoke his probation. Having concluded that the trial court had sufficient evidence to support its findings as to violations alleged, we further conclude that it was well within the trial court's discretion to revoke Appellant's deferred adjudication community supervision. Moreover, because Appellant has not challenged the sufficiency of the evidence for all alleged violations that the trial court found to be true, we must affirm the judgment revoking community supervision. *See Baxter*, 936 S.W.2d at 472; *see also Leonard*, 385 S.W.3d at 576; *Moore*, 605 S.W.2d at 926.

We overrule Appellant's sole issue.

*This Court's Ruling*

We affirm the judgment of the trial court.

W. BRUCE WILLIAMS
JUSTICE

May 23, 2024

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.